Filed 6/12/25  P. v. Scott CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, Plaintiff and Respondent, v. SEDRIC WAYNE SCOTT, Defendant and Appellant. | B335316 (Los Angeles County Super. Ct. No. BA420534) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Terry A. Bork, Judge.  Vacated and remanded.

Laini Millar Melnick, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Scott A. Taryle, Supervising Deputy Attorney General, and Chung L. Mar, Deputy Attorney General, for Plaintiff and Respondent.

This is the second appeal arising out of an order resentencing defendant and appellant Sedric Scott (defendant) pursuant to Penal Code section 1172.6.[1] This time, we are asked to decide whether the trial court erred in (1) selecting robbery as the crime to which defendant's second degree murder conviction should be redesignated, and (2) selecting the high term for the robbery sentence.

## I. BACKGROUND

*A.    The Offense Conduct*

Defendant, John Armstrong (Armstrong), and Curtis Lowe (Lowe) were members of the Swans criminal street gang. In May 2012, defendant and Armstrong approached victim Patrick Lister (Lister) outside a market and asked where he was from—commonly understood to be a gang-related confrontation. Lister did not respond and entered the market.

Defendant and Armstrong followed Lister inside, and defendant tore a gold chain from Lister's neck. As defendant ran out of the market, Lister gave chase. Defendant, Armstrong, and other members of the Swans gang then attacked Lister. Lowe ran from across the street and joined in the group assault. At some point during the altercation, defendant pocketed the chain. When the attack stopped, Lister's chest was covered in blood. Lister died days later from a six-inch-deep stab wound that had pierced his heart.

The market's surveillance camera, which captured portions of the attack, showed Lowe walking toward the market from the

---

[1]    Undesignated statutory references that follow are to the Penal Code.

2

direction of the fight, moving something from his left hand to his right hand, and putting it in his pocket. Later, the video showed Lowe opening his right palm and looking down at it. Another Swans gang member interviewed by police after the murder claimed Lowe stabbed Lister, though the gang member conceded he had not seen the actual act of stabbing himself.

### B.     Trial, and the Murder Instructions Given

Defendant, Nathaniel Willard (Willard), Lowe, and Armstrong were charged with Lister's murder in 2014. The information alleged the murder was committed while the men were engaged in the commission of a robbery and was committed for the benefit of, at the direction of, and in association with a criminal street gang.

During the defense case at trial, defendant testified he accidentally broke Lister's chain during the altercation but he gave it back to Lister. Defendant said Lister was not bleeding when he returned the chain, and he had not known at the time that Lister had been stabbed.

The jury was instructed that defendant and his accomplices were being prosecuted under three theories of murder: (1) malice murder, (2) felony murder, and (3) murder pursuant to the natural and probable consequences doctrine.

The instruction on murder under the natural and probable consequences doctrine stated that "[t]o prove that the defendant is guilty of murder under a theory of aiding and abetting, the People must prove that: [¶] 1. The defendant is guilty of battery or assault; 2. During the commission of battery or assault, a co-participant committed the crime of murder; [¶] AND 3. Under all of the circumstances, a reasonable person in the defendant's

3

position would have known that the commission of the murder was a natural and probable consequence of the commission of battery or assault." The instruction also stated, "[i]f you find a defendant guilty of murder under a natural and probable consequence theory, the defendant is guilty of murder in the second degree. A defendant cannot be found guilty of first degree murder based on this theory alone."

The felony murder instruction stated defendant "may be guilty of murder, under a theory of felony murder, even if another person did the act that resulted in the death." For felony murder, one of the enumerated elements the People were required to prove was that "[t]he defendant committed, or aided and abetted, robbery . . . ." The instruction on felony murder stated that if the jury found defendant guilty of murder under a felony murder theory, he is guilty of murder in the first degree.

The jury convicted defendant of second degree murder. The jury found true allegations that Lister's murder occurred during the commission of a robbery and the murder was committed for the benefit of, at the direction of, or in association with a street gang. The trial court sentenced defendant to 15 years to life in prison for the murder.

Defendant appealed the judgment of conviction and a prior panel of this court affirmed the conviction but ordered the robbery-murder special circumstance finding stricken.

### C.     The Petition for Resentencing

Defendant filed a section 1172.6 petition for resentencing and the trial court subsequently appointed counsel for defendant. The People conceded defendant's trial jury "rejected the felony murder theory of liability" (because it convicted on second degree

4

murder, not first degree murder) and defendant was not ineligible for relief as a matter of law because the prosecutor had argued stabbing and murder were a natural and probable consequence of simple assault and battery. The trial court determined defendant had established a prima facie case for relief and set the matter for an evidentiary hearing.

A few months later, the parties stipulated defendant was eligible to have his murder conviction vacated and redesignated to another offense. In briefs filed in advance of a hearing to redesignate the offense pursuant to the parties' stipulation and resentence defendant, defendant argued he should be resentenced to assault or battery as the target offense because the jury convicted him of second degree murder based on the natural and probable consequences doctrine. The People argued the trial court could redesignate the offense as both robbery and felony assault.

The trial court held a hearing in September 2021. The court accepted the stipulation of the parties and vacated defendant's murder conviction. The court found the murder had been charged generically and believed no target offense (for natural and probable consequences doctrine purposes) was charged. The court therefore determined it would redesignate defendant's conviction as one for second degree robbery—treating that as the "underlying felony."

In explaining its rationale, the trial court stated that this court, when it earlier struck the special circumstance finding attached to the murder charge, did not conclude there was insufficient evidence of an underlying robbery or defendant's participation in that robbery. The court also believed the evidence in the trial record established beyond a reasonable

doubt that the conduct underlying the murder conviction constituted second degree robbery. The court stated it was convinced beyond a reasonable doubt that defendant was guilty of robbery and that the gang allegation previously charged against defendant was true. (The court recognized it could strike the gang enhancement, but it declined to do so.)

The court accordingly sentenced defendant to a total of 15 years in state prison, comprised of the upper term of five years for the newly redesignated offense of robbery, plus ten years for the gang enhancement. In doing so, the court found the following circumstances in aggravation: the crime involved great violence and great bodily harm; the manner in which the crime was carried out indicated planning, sophistication or professionalism; defendant engaged in violent conduct that indicated he was a serious danger to society; defendant's prior convictions were numerous or of increasing seriousness; and defendant had served a prior prison term.

D.    *The Prior 1172.6 Appeal and the Proceedings on Remand*

Defendant appealed the new judgment of conviction. As pertinent here, defendant challenged the trial court's imposition of the gang enhancement. He did not address the court's selection of robbery as the redesignated offense. A prior panel of this court agreed there was insufficient evidence to find the gang enhancement true under the law as it had since been amended, and this court reversed and remanded with instructions to give the People the opportunity to prove the gang enhancement under the then-prevailing legal standard. (*People v. Scott* (Mar. 30, 2023, B315262) [nonpub. opn.].)

6

The People elected not to retry the gang allegation and the trial court dismissed it in the interests of justice. Before defendant was resentenced, the People represented defendant had custody credits in excess of the maximum possible sentence for robbery. The trial court resentenced defendant to five years in prison, the high term for the redesignated robbery offense. Relying on defendant's record of prior convictions in the probation officer's report and court file, the court identified the following aggravating circumstances: (1) the victim died; (2) defendant's prior convictions were numerous or of increasing seriousness; and (3) defendant had served a prior prison term.

## II. DISCUSSION

Practically, the issues we are asked to decide in this appeal (whether robbery was the correct redesignated offense and, if so, whether an upper term sentence was proper) are of limited significance: defendant by this point has already served the maximum possible sentence for robbery so our resolution of this appeal does not affect the sentence he will ultimately serve. But practical consequences aside, we believe defendant is correct that robbery was not the correct redesignated offense. As the People previously conceded in the trial court, the trial jury's second degree murder finding reveals the jury rejected felony murder as a theory of murder liability. Thus, to be eligible for resentencing as the parties had stipulated, defendant must have been convicted on a natural and probable consequences theory of murder and the trial court could only properly resentence defendant to the target crimes (assault and battery) that the prosecution argued for its natural and probable consequences theory. We shall accordingly reverse and remand for

7

reimposition of sentence, and we need not address defendant's argument that an upper term sentence for the robbery conviction was unjustified.

"[S]ection 1172.6 provides an opportunity for criminal defendants who were convicted of murder under either a natural and probable consequences theory or (in some circumstances) under a felony-murder theory—and who could not be convicted of murder under the law as it currently stands—to file a petition to be resentenced. A successful petitioner is entitled to have the murder 'conviction, and any allegations and enhancements attached to the conviction' vacated and to be 'resentenced on the remaining charges.' [Citation.] But a successful petitioner who was charged with murder 'generically, and the target offense was not charged' is entitled to have the murder conviction 'redesignated' as 'the target offense' of the natural and probable consequences theory—or the 'underlying felony' of the felony murder—and to be resentenced accordingly. [Citation.]" (*People v. Arellano* (2024) 16 Cal.5th 457, 463-464; see also Pen. Code § 1172.6, subd. (e) ["The petitioner's conviction shall be redesignated as the target offense or underlying felony for resentencing purposes if the petitioner is entitled to relief pursuant to this section, murder or attempted murder was charged generically, and the target offense was not charged"].)

Defendant's murder was charged "generically" and no target offense was charged. That means, pursuant to section 1172.6 and *Arellano*, defendant's redesignated offense should either be the target offense(s) that served as the predicate for the natural and probable consequences theory of liability or the underlying felony offense if convicted on a felony murder theory of liability.

8

In light of the instructions given to defendant's trial jury and the verdict it returned, only the natural and probable consequences target crimes were available choices for a redesignated offense of conviction. The natural and probable consequences instruction stated that if the jury found defendant guilty of murder under that doctrine, he was "guilty of murder in the second degree." The felony murder instruction, in contrast, provided that if the jury were to find defendant guilty of felony murder, he was "guilty of murder in the first degree." Defendant's jury found him guilty of second degree murder. As the People conceded below, this means the jury rejected the felony murder basis for murder liability—and that means redesignating defendant's conviction as the felony underlying the felony murder theory was not a permissible option.[2] (See *People v. Curiel* (2023) 15 Cal.5th 433, 470 ["jury's factual findings should be given preclusive effect"]; *People v. Lopez-Barraza* (2025) 110 Cal.App.5th 1227, 1247-1248 ["Because section 1172.6 is not meant to provide for *relitigation* of issues that *were* decided at the prior trial, however, the resentencing court is precluded from deciding the new issues based on factual findings that are inconsistent with facts *necessarily* found by the jury"].) Only the target crimes actually presented to the jury in connection with the natural and probable consequences doctrine (battery and assault) were available options when redesignating defendant's offense of conviction.

---

[2] The jury's special circumstance finding concluding the murder occurred during the commission of a robbery, which was stricken on direct appeal, is irrelevant. "Once a jury's finding is stricken, it is stricken." (*People v. Barboza* (2021) 68 Cal.App.5th 955, 965.)

The Attorney General has only two responses, neither of which directly disputes the foregoing analysis. The Attorney General argues, first, that defendant's challenge to the redesignated offense chosen is waived because he could have, but did not, raise the issue in his first appeal from the resentencing order. We agree with defendant, however, that the claim is not waived because designating the conviction as something other than the target offense of assault or battery results in an unauthorized sentence that can be raised in a successive appeal even though it should have been raised earlier. (See, e.g., *People v. Cota* (2023) 97 Cal.App.5th 318, 329; *People v. Jordan* (2018) 21 Cal.App.5th 1136, 1145.) The Attorney General also argues, second, that the trial court's sentence was not improper because the record of conviction does not establish defendant was necessarily convicted of murder under the natural and probable consequences doctrine. The People point to the fact that the jury was instructed they did not all need to agree on the same theory to find defendant guilty of murder. But we do not think the possibility that some *jurors* would have been willing to convict defendant of felony murder undercuts the fact that *the jury* ultimately rejected that theory.

10

DISPOSITION

The judgment is vacated and the cause is remanded with directions to enter a new judgment of conviction limited to the available target offenses that were presented to the jury in connection with the instruction on the natural and probable consequences doctrine.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

BAKER, J.

We concur:

HOFFSTADT, P. J.

MOOR, J.

11